1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

CHI XIA,

                 Petitioner,

    v.

NEVADA ATTORNEY GENERAL, *et al.*,

           Respondents.

Case No. 3:16-cv-00651-HDM-CLB

**ORDER**

     The petitioner in this action challenges his 2013 Nevada state conviction, pursuant to a jury verdict, of six counts of theft and one count of attempt theft. The second amended petition is now before the court for adjudication of its surviving claims.[1] (ECF No. 23). Respondents have answered the petition (ECF No. 37), and the petitioner has replied (ECF No. 38)

**I. Background**

     In the spring of 2012, Yiyue Guan met the petitioner through a social networking app called MoMo. By October 2012, the petitioner had convinced Guan to write a check in the amount of $100,000.00 for the purpose of establishing an account with the Bellagio Hotel and Casino. According to Guan, the petitioner promised that she would be able to withdraw her funds at any time

---

     [1] Previously, the court dismissed Ground 1(b) as untimely. (ECF No. 34).

and that, in the meantime, her money would earn her points and comps at the casino.

Over the next several weeks, Guan continued to write more checks for the petitioner to deposit with either the Bellagio or MGM. But by Thanksgiving, Guan needed her money back. When she asked the petitioner to assist her in withdrawing her funds, the petitioner told Guan that her money was actually in his account, that his account was locked, and that in order to unfreeze his account, he needed more money. Guan thereafter wrote more checks to help the petitioner unfreeze his account, but the petitioner returned her only $19,000.00. When the petitioner effectively disappeared in March 2013, Guan contacted the police. By this time, Guan had given petitioner six checks totaling $698,000.00.

In late March 2013, the petitioner contacted Guan and told her he could give her about half of her money but that he needed another $36,000 to unlock his account. Guan agreed to give the petitioner a check for $36,000, but when the petitioner arrived to collect it, he was placed under arrest. (Ex. 42 (Tr. 146 *et seq.*); Ex. 43 (Tr. 6-26, 50).)[2]

On May 16, 2013, the petitioner was charged by way of criminal complaint with six counts of theft and one count of attempt theft. (Ex. 21.) At the preliminary hearing, the parties discussed several offers that had been made to, and rejected by, the petitioner, as follows:

THE COURT:     State, was there an offer in this case?

---

[2] The exhibits cited in this order, comprising the relevant state court record, are located at ECF Nos. 12 and 28-30.

1    MR. RAMAN:      Yes. I'll put it on the record.

2    THE COURT:      Sure.

3    MR. RAMAN:      There were several versions of the offer
4                    that were available.

5                    My knowledge is the defendant has
                     rejected those and I have informed him
6                    they are no longer available if we press
                     forward with the preliminary hearing.

7                    The first offer was to pay back the money
8                    taken and we would dismiss the case.

9                    Clearly, that offer was contingent upon
                     that being done before he leaves custody.
10                   He is a Chinese National on a tourist
                     Visa. We have little guarantees that if
11                   he says if does that, it will actually
                     get done. So that money would have to be
12                   paid back before he was released. That
                     was rejected.
13
                     Another offer was to two B thefts, right
14                   to argue, no opp to concurrent
                     stipulated, restitution of the -- I
15                   believe 690,000, and no diversion
                     programs.
16
                     That also was rejected.
17
                     And a theft, felony, a stipulated 2-to-5
18                   year sentence was also rejected.

19                   Is that correct?

20   MR. HILL:       That is correct, your Honor.

21   THE COURT:      But you discussed all of those options
22                   with your client?

23   MR. HILL:       I have.

24   THE COURT:      Are those offers -- any of those offers
                     still on the table or are they off the
25                   table at this point?

26   MR. RAMAN:      They are off the table.

27   THE COURT:      Your client understands there is no more
                     offers at this point?
28
     MR. HILL:       He understands, your Honor.

                                3

THE COURT:        Okay. Is that correct, sir? You spoke about all this with your attorney, all the options?

XIA:              Yes.

THE COURT:        And you wish to reject those offers?

XIA:              I don't agree.

THE COURT:        I'm sorry?

XIA:              I don't agree.

THE COURT:        You don't agree? You don't agree to what?

XIA:              I don't agree with the deal.

THE COURT:        Okay, okay. All right, that's fine. We just need to make a record.

(Ex. 23 (Tr. 4-6).) The petitioner also testified at the hearing. According to the petitioner, Guan gave him the money for gambling and he lost it all. He said that he felt "bad" about that and so tried to obtain $500,000.00 to $600,000.00 to give her, but that he first needed $36,000.00 to "retrieve [a] token" that would allow him to access such funds from an account in China. (Ex. 23 (Tr. 94-97).)

Following a four-day jury trial, the defendant was convicted on all charged counts and later sentenced to six concurrent three-to-ten-year prison terms and one concurrent one-to-four-year term. (Exs. 5, 42-44 & 48). The petitioner thereafter pursued a direct appeal, a postconviction petition and appeal, and the instant federal habeas petition.

4

1

**II. Standard**

2      28 U.S.C. § 2254(d) standard applies to review of a claim

3   that was adjudicated on the merits in state court proceedings under

4   the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

5          An application for a writ of habeas corpus on behalf of
           a person in custody pursuant to the judgment of a State
6          court shall not be granted with respect to any claim
           that was adjudicated on the merits in State court
7          proceedings unless the adjudication of the claim –

8          (1) resulted in a decision that was contrary to, or
9          involved an unreasonable application of, clearly
           established Federal law, as determined by the Supreme
10         Court of the United States; or

11         (2) resulted in a decision that was based on an
           unreasonable determination of the facts in light of the
12         evidence presented in the State court proceeding.

13   28 U.S.C. § 2254(d). A state court decision is contrary to clearly

14   established Supreme Court precedent, within the meaning of 28

15   U.S.C. § 2254(d), "if the state court applies a rule that

16   contradicts the governing law set forth in [Supreme Court] cases"

17   or "if the state court confronts a set of facts that are materially

18   indistinguishable from a decision of [the Supreme] Court." *Lockyer*

19   *v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v.*

20   *Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*,

21   535 U.S. 685, 694 (2002)). A state court decision is an

22   unreasonable application of clearly established Supreme Court

23   precedent within the meaning of 28 U.S.C. § 2254(d) "if the state

24   court identifies the correct governing legal principle from [the

25   Supreme] Court's decisions but unreasonably applies that principle

26   to the facts of the prisoner's case." *Id.* at 75. "The 'unreasonable

27   application' clause requires the state court decision to be more

28

5

than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.*

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

To the extent that a state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference to the state court factual finding:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances

6

> if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *limitation on holdings recognized by Murray v. Schriro*, 745 F.3d 984, 999-1001 (9th Cir. 2014); *see also Lambert*, 393 F.3d at 972.

**III. Analysis**

**A. Ground 1(a)**

In Ground 1(a), the petitioner alleges that he was denied effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights because trial counsel failed to properly advise him regarding the State's offer to dismiss all charges if he were to fully reimburse Guan. (ECF No. 23 at 6-8.) Specifically, the petitioner asserts that he did not know about or understand plea bargaining, counsel did not explain plea bargaining or the offer, and counsel did not advise the petitioner to accept the offer.[3] The Nevada Court of Appeals addressed the petitioner's claim as follows:

---

[3] The reply attempts to materially expand the petitioner's claim, for instance by arguing that counsel did not explain *any* of the many plea offers extended to the petitioner and by asserting that there is "no record" that Xia had an interpreter during his conferences with counsel. (ECF No. 28, at 10 & 14.) Habeas pleading is not notice pleading. A petitioner must allege the specific operative facts upon which he bases his claim with particularity in the petition, especially in a counseled amended petition. *See Mayle v. Felix*, 545 U.S. 644, 655-56 (2005). A petitioner therefore may not use a reply to raise additional claims and supporting operative factual allegations that are not included in the petition. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). The operative allegations raised for the first time in the *(fn. cont…)*

1
2
3
4
5
6
7
8

> Chi Xia claims trial counsel was ineffective for failing to explain the State's plea offer to him and allow him to decide whether to accept or reject the offer. Chi Xia failed to demonstrate counsel was ineffective. The record reveals the prosecutor placed the plea offer on the record, defense counsel stated the plea offer was rejected, and Chi Xia was present with a Chinese interpreter and did not dispute defense counsel's statement. Accordingly, we conclude the district court did not err in rejecting this claim. *See Means v. State*, 120 Nev. 1001, 1012-13, 103 P.3d 25, 33 (2004) (petitioner bears the burden of proving ineffective assistance of counsel).

9
10
11
12

(Ex. 116 at 3-4.) This finding was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of facts.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring Petitioner to demonstrate that: (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). However, the Court need not "address both components of the inquiry" if the petitioner "makes an insufficient showing on one." *Id*. at 697. Courts considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. It is the

27
28

reply, which seek to materially expand the claim responded to in the answer, therefore are not properly before the court.

8

petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. *Missouri v. Frye*, 566 U.S. 133, 145 (2012). Counsel is deficient if he or she fails to communicate to defendant prosecutor's plea offer before it expires. *Id.* To establish prejudice in this context, the petitioner must, in relevant part, "demonstrate a reasonable probability [he] would have accepted the . . . plea offer had [he] been afforded effective assistance of counsel." *Id.* at 147.

To the extent the petitioner claims his attorney did not advise him of, or adequately explain, the offer, that claim is belied by the record. Several of the offers that were extended to the petitioner were set forth on the record at the preliminary hearing, in the petitioner's presence. The petitioner's attorney stated that he had discussed all the offers with the petitioner and that the petitioner declined each. The petitioner did not dispute this representation and in fact, when asked by the court if it was accurate, the petitioner responded that he "did not agree to the deal." (Ex. 23 (Tr. 4-6).) The state courts were therefore

reasonable in concluding that the petitioner had been advised of the plea offers, that the plea offers had been explained to him, and that he had knowingly declined to accept any of them.

First, the petitioner's assertion that he could not understand the interpreter at the preliminary hearing is entirely unsupported. At no time during or after the hearing did the petitioner indicate he was having trouble understanding the interpreter, and, in fact, his response to the court's questions indicates that he fully understood what was being discussed.

Second, there is no requirement that a petitioner have prior knowledge about plea bargaining in order to understand a plea offer. Here, counsel represented that he explained the plea offer to the petitioner, and the petitioner did not dispute this representation.

Third, whether the petitioner could still accept the offers at the preliminary hearing is irrelevant. Even if the offers were closed, the petitioner could have disputed counsel's representations to the court that counsel had explained the offers to the petitioner and that the petitioner chose not to accept them.

Fourth, the court's direct question to the petitioner asking whether counsel's representations were correct, and the petitioner's response that he did not agree to a deal, was a sufficient canvass to determine that the petitioner had knowingly rejected the State's offers.

Finally, the petitioner's assertion that the state court's factual determination was unreasonable is not persuasive. Where the evidence already before the state court established that the

1
2
3

petitioner had understood and rejected the plea offers, it was not unreasonable for the state courts to decline to hold an evidentiary hearing on this claim.

4

   **B. Ground 2**

5
6
7
8
9
10
11
12
13
14
15
16

   In Ground 2, the petitioner alleges that he was denied his right to be free from self-incrimination under the Fifth and Fourteenth Amendments and in violation of *Miranda v. Arizona* when he did not voluntarily and intelligently waive his rights. (ECF No. 23 at 10.) The record reflects that the petitioner's police interview was conducted by two detectives, one of whom spoke English and Mandarin and acted as both detective and translator during the interview. The petitioner contends that because he was not aware that this detective was serving as both detective and a translator, his statements were not voluntary and were made without a valid waiver of his *Miranda* rights. (*Id.* at 10-11.)

17
18

   In affirming the petitioner's convictions, the Nevada Supreme Court held:

19
20
21
22
23
24
25
26
27
28

> First, appellant claims that he did not voluntarily and intelligently waive his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), when he was unaware that one of the detectives involved in his interview was acting as both a detective and a translator and when he did not consent to speak with that detective voluntarily. The burden to make a proper appellate record rests on the appellant, *Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980), and an appellant has the ultimate responsibility to provide this court with "portions of the record essential to determination of issues raised in appellant's appeal," NRAP 30(b)(3). We conclude that appellant has not provided this court with all essential portions of the record, such as a transcript of the interview or the audio version of the interview presented at trial, and therefore has not

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> demonstrated that his *Miranda* rights were
> violated.
>
> . . .
>
> Having considered appellant's claims and
> concluded that no relief is warranted, we
> ORDER the judgment of conviction AFFIRMED.

(Ex. 96 at 2, 4.)

Addressing first the standard of review, the court finds no merit to the petitioner's argument, raised for the first time in the reply, that review should be *de novo*. Although the Nevada Supreme Court referred to a rule requiring the appellant to provide record materials "essential to determination of issues raised in appellant's appeal," it said in conclusion that "[h]aving considered appellant's claims and concluded that no relief is warranted, we ORDER the judgment of conviction affirmed." (Ex. 96 at 2, 4.) "[U]nless a court expressly (not implicitly) states that it is relying upon a procedural bar, [the court] must construe an ambiguous state court response as acting on the merits of a claim, if such a construction is plausible." *Chambers v. McDaniel*, 549 F.3d 1191, 1197 (9th Cir. 2008). The Nevada Supreme Court did not expressly rely on a procedural bar in denying the petitioner's claim, and it is plausible that it denied the claim on the merits as unsupported. *De novo* review is not therefore appropriate.

The petitioner cites no controlling Supreme Court authority holding that a *Miranda* violation occurs where an interviewing detective also serves as a translator. He furthermore has not established that his interview was conducted without a proper *Miranda* warning. Thus, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of,

12

clearly established law as determined by the United State Supreme Court. The petitioner is not entitled to relief on Ground 2.

**C. Ground 3**

At trial, the jury was presented a transcript of the petitioner's interview, in English, which was prepared by the translating detective, and an audio recording of the interview. (ECF No. 28-27 at 23.) In Ground 3, the petitioner appears to assert ineffective assistance of counsel based on: (1) trial counsel's failure to obtain a certified translation of his interview with the detectives; and (2) appellate counsel's failure to include as part of the direct appeal either a certified translation of the interview or "a copy of [the petitioner's] statement." (ECF No. 23 at 11-12; ECF No. 38 at 17-18.)

The state appellate court rejected these claims on the following basis:

> The district court found that [the petitioner] failed to allege or demonstrate his *Miranda* claim would have had a reasonable probability of success on appeal. We conclude the district court's factual findings are supported by substantial evidence and are not clearly wrong and the district court did not err in rejecting this claim. *See Means*, 120 Nev. at 1012-13, 103 P.8d at 33.[4]
>
>> [4] To the extent [the petitioner] also claimed trial counsel was ineffective for failing to procure a transcript of the police interview, we conclude he failed to meet his burden to prove counsel was ineffective for the same reason.

(Ex. 116 at 4.)

The petitioner has not submitted any alternate transcript of his police interview which could be compared to the transcript

13

introduced at trial, much less explained how such a transcript would demonstrate the violation of any constitutional right. For that reason, the petitioner has established neither that his attorneys were deficient in failing to secure and provide to the courts a certified transcript nor what prejudice resulted therefrom. The Nevada Court of Appeals reasonably determined that the petitioner had not established ineffective assistance of counsel.[4] The petitioner is not entitled to relief on Ground 3.

## IV. Certificate of Appealability

In order to proceed with an appeal, the petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold

---

[4] For the first time in the reply, the petitioner asserts that the state courts' factual findings were objectively unreasonable because the court never acted on the petitioner's motion for a certified translation of the police interview at state expense. (ECF No. 38 at 15.) Whatever the merit of this argument, it does not change the result. Even applying a *de novo* standard of review to the state courts' factual findings, the petitioner has not established any prejudice because he has not produced a certified transcript for the court's review.

inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The court has considered the issues raised by the petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability and determines that none meet that standard. Accordingly, the petitioner will be denied a certificate of appealability.

**V. Conclusion**

IT IS THEREFORE ORDERED that the remaining grounds in the petition, Grounds 1(a), 2 and 3, are DENIED with prejudice on the merits and that this action shall be DISMISSED.

IT IS THEREFORE ORDERED that a certificate of appealability is DENIED. For the reasons discussed herein, reasonable jurists would not find the district court's assessment of the grounds dismissed herein on the merits to be debatable or wrong. Jurists of reason further would not find it debatable whether the district court was correct in its procedural ruling dismissing Ground 1(b) as untimely, for the reasons stated in ECF No. 34.

The Clerk shall enter final judgment accordingly and close this case.

IT IS SO ORDERED.

DATED this 14th day of September, 2021.

Howard D. McKibben

_____
HOWARD D. MCKIBBEN
UNITED STATES DISTRICT JUDGE